**IN THE COURT OF APPEALS OF IOWA**

No. 15-1155
Filed September 10, 2015

**IN THE INTEREST OF P.L. III AND B.L.,**
**Minor Children,**

**J.D., Mother,**
**Appellant,**

**P.L. II, Father,**
**Appellant.**
_____

Appeal from the Iowa District Court for Montgomery County, Susan L.

Christensen, District Associate Judge.

A mother and father separately appeal the juvenile court's termination of

their parental rights to their two children. **AFFIRMED ON BOTH APPEALS.**

DeShawne L. Bird-Sell of Sell Law P.L.C., Glenwood, for appellant

mother.

Karen L. Mailander, Anita, for appellant father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant

Attorney General, and Bruce E. Swanson, County Attorney, for appellee State.

Josiah Wearin of Stamets & Wearin, P.C., Red Oak, attorney and

guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, J.**

A mother and father separately appeal the juvenile court's termination of their parental rights to their children, B.L. and P.L.

**I. Factual and Procedural Background**

B.L. was born on January 1, 2010. P.L. was born on May 18, 2011. On September 9, 2011, the juvenile court entered an order adjudicating both children to be in need of assistance (CINA) because both parents were found to be under the influence of methamphetamine while caring for the children. Both parents were reportedly agitated and issuing threats against the people they believed had reported them. The children were adjudicated CINA a second time on October 19, 2012,[1] because both parents admitted to continuing use of methamphetamine and marijuana for several weeks in their residence while the children were in their care.

Following the children's second CINA adjudications, the mother entered in-patient treatment, and the court allowed her to maintain custody and care of the children. She successfully completed treatment in January 2014. Conversely, the father failed to participate in court-ordered services, including drug screens, substance abuse evaluations, mental health evaluations, and parenting training. He did, however, participate in supervised visitation. He was homeless and unemployed.

After the mother completed her treatment program, concerns arose regarding her continuing co-dependent relationship with the father. She relapsed

---

[1] The first CINA cases were closed in June 2012. The State filed new CINA petitions for both children in August 2012.

into marijuana use. Her participation in services began to decline, and she refused to take advantage of subsidized housing because the father would not be allowed to live with her and the children. At a review hearing on May 9, 2013, the court admonished the mother regarding her relationship with the father:

> I wish you would be honest with us. If you intend to continue a relationship with him, it would certainly change how I am ordering services, but I'm assuming you're going to make good choices, but if you intend to do whatever he wants, even if it's in controversy to what I'm saying needs to be done, I am greatly concerned about the children's safety.
>
> According to the [substance abuse treatment] report, Mom continues to put her and her children in unsafe situations regardless of the consequences and knowingly, again, recommendations from [the department of human services (DHS)] and/or [her treatment program]. She has yet to remove herself from the people, places, and things which is the foundation to her prevention plan.
>
> She's no longer employed. She's not engaging in NA meetings. She continues to surround herself with the same people, places, and things. You are very close to DHS making a recommendation. . . . You are walking a very fine line of removal.
>
> . . . .
>
> If you want to hang with a guy who is their father and continue to be at his beck and call and he is continuing to use meth, that's almost the same as you too. You're exposing the children to that environment. It's either that or your kids. Sometimes you need to make a choice. Do you get it, Mom?
>
> . . . .
>
> At this time I will adopt the recommendations that the children remain with Mom, but I want this to be on the record. I am concerned about continued placement with the children if Mom does not start standing up for her kids and turning away from Dad when he encourages her to do things that are not in the children's best interests.

The father continued to defy court-ordered services. He finally submitted to a substance abuse evaluation ten months after he was ordered to do so. He refused the recommended treatment after his evaluation.

On September 12, 2013, the juvenile court held another review hearing. Evidence indicated the mother continued her relationship with the father, who remained homeless. The court noted it would "consider closing out this case" if the parents were no longer a couple. Because the mother had not heeded the court's advice and had not broken off her relationship with the father, the court instead ordered a permanency hearing to "give[] us all a chance to think about [whether] reunification [is] still the most appropriate."

In a review order filed on January 9, 2014, the juvenile court found the mother's relationship with the father remained a "moving target." The father had continued to refuse services. Concerns persisted that the mother's ongoing relationship with the father and co-dependency was frustrating the reunification process. The mother had been in and out of various treatment programs and had failed to comply with the Parent-Child Interactive Therapy that had been ordered for the children. During the January 9 hearing, the court again addressed the mother directly:

> Q: [The father is] the reason why we can't close out the case. . . . You can choose the guy over the kids if you want; but that certainly is going to affect the outcome of this case. Do you understand that, Mom?
> A: Yes, Your Honor.

In June 2014, it came to light that the mother had relapsed into methamphetamine use. A temporary removal hearing was held on June 12, 2014. The same day, the court ordered the children removed from the mother's care and placed care and custody of the children with DHS. DHS placed the children with their maternal great-aunt and great-uncle. After the children were removed, they were observed exhibiting inappropriate behaviors, and the court

ordered mental health evaluations for both of them. The evaluations revealed both children suffered from adjustment disorders.

Following the children's removal, the mother joined the father—homeless and sleeping in a tent in a friend's yard. The juvenile court noted the mother's progress in reunification had been inconsistent and the father had not taken any meaningful steps toward reunification. It ordered the State to commence termination proceedings against both parents. The mother enrolled in an in-patient treatment program. She elected to enroll in a program three hours away from the children, and she was unable to participate regularly in visitation with them as a result. She did, however, twice make the journey to the aunt and uncle's home to visit the children. She requested on more than one occasion that the children be placed with her at the treatment facility, but the juvenile court rejected her requests. The father continued living in a tent and did not participate in services other than visitation.

A termination hearing took place on April 10, 2015. The mother's ongoing participation in her in-patient treatment yielded positive results. However, over the mother's insistence otherwise, evidence in the record indicated her relationship with the father was ongoing. She testified she wrote a letter to the father breaking off their relationship, but on cross-examination she revealed she never actually sent the letter. Evidence showed the mother had been in contact with the father and gave him a ride to visitation, which compromised her positive status in her treatment program. She testified she knew her treatment program supervisors would "have a problem" with her contact with the father, but she decided to make contact with him regardless. DHS reported, "When [the mother]

and [father] are together, [the mother] has portrayed a consistent pattern of her inability to maintain sobriety, inability to maintain adequate housing, and her inability to prioritize her children's needs and safety above that of her relationship with [the father]."

On June 30, 2015, the juvenile court terminated both parents' rights to the children under Iowa Code sections 232.116(1)(d), (e), (h),[2] (i), and (*l*) (2015). The mother and father appeal, alleging termination was improper because none of the five statutory sections relied upon is satisfied on the facts of this case.

**II. Standard of Review**

We review an order terminating parental rights de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

**III. Discussion**

Appellate review of a termination order follows a three-step analysis. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, we determine "if a ground for termination exists under section 232.116(1)." *Id.* Second, we determine whether termination is in the child's best interests pursuant to section 232.116(2). *See id.* Lastly, we may decline to terminate if the mitigating factors delineated in section 232.116(3) dissuade us. *See id.* Facts supporting termination must be established by clear and convincing evidence. *See* Iowa Code § 232.117(3). Evidence is clear and convincing when "there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

---

[2] Section 232.116(1)(h) applied only to P.L., while the other four sections relied upon applied to both children.

"When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We find section 232.116(1)(*l*) supports termination as to both children and both parents, and we therefore do not consider sections 232.116(1)(d), (e), (h), or (i).

Iowa Code section 232.116(1)(*l*) provides the juvenile court may terminate parental rights if it finds that all of the following have occurred:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
> (2) The parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts.
> (3) There is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

The first prong of this test is satisfied. Both children were adjudicated CINA on September 9, 2011, and again on October 19, 2012. They were removed from their parents' custody on June 12, 2014.

The second prong of the test is also satisfied. The record contains two reports from the substance abuse treatment evaluations of both parents. The reports indicate both parents met the criteria of amphetamine dependence and cannabis dependence per the diagnostic and statistical manual of mental disorders (DSM).[3] The parents' dependences continue to present a danger to

---

[3] Iowa Code section 125.2(14) defines a "substance-related disorder" as "a diagnosable substance abuse disorder of sufficient duration to meet diagnostic criteria specified within the most current diagnostic and statistical manual of mental disorders published by the American psychiatric association that results in functional impairment." This statutory definition prevents us from "assessing in lay terms whether the parent suffers from a severe, chronic substance problem." *See In re L.S.*, No. 14-1026, 2014 WL

the children, as the parents' prior acts demonstrate they may relapse into methamphetamine or marijuana use even while acting as caretakers for the children.[4] Their dependences have had a continuous negative impact on the children since the first CINA adjudications four years ago, demonstrating the longevity and severity of the parents' disorders.

The third prong of the test is satisfied. The children are of a young age, and they need permanency as soon as possible—demonstrated by their recently-manifested behavioral issues and recent adjustment-disorder diagnoses. The children are not able to be returned to their mother's care while she is in in-patient treatment three hours away from their current placement and while the mother continues her relationship with the father. They will not be able to be returned to her within a reasonable time because the mother's relationship with the father shows no indication that it will end in the future and her in-patient treatment program is a twenty-four month program. The father concedes the children cannot be returned to his care. He remains homeless and refuses to comply regularly with drug screens or substance abuse treatment. The children will not be able to return to his care in a reasonable time.

The mother argues the third prong is not satisfied because her counselor at her treatment program has recommended the children join her at the in-patient

---

5252948, at *6 (Iowa Ct. App. Oct. 15, 2014) (internal quotation marks omitted). In this case, we rely on the report generated following the parents' court-ordered evaluations. The parents' evaluations were made in reference to the current DSM at the time they were performed—DSM-IV. Though a new edition of the DSM was published subsequent to the reports, we find the reports in the record satisfy the requirements of section 125.2(14).

[4] The mother asserts, "There is absolutely nothing to suggest that [the mother] was a danger to herself or others." However, her argument ignores the reality that the children are neglected and put in danger when she uses methamphetamine while acting as their only caretaker.

facility. However, the juvenile court on several occasions determined—and we agree—the children should not be placed in her care while she is in treatment and while her relationship with the father continues. The mother was told by the juvenile court in no uncertain terms and on multiple occasions that her ongoing relationship with the father was a barrier to her reunification with the children. Each time she indicated she would choose her children over their father, and each time she has failed to act on her promise. She has not taken any meaningful steps to insulate the children or herself from the father.

The mother relies solely on her counselors' recommendations that the children be allowed to visit her at the facility in hope they will eventually be able to join her permanently. However, she fails to acknowledge the contrary recommendations from other sources. The children's mental health counselor believed placement with the mother would be detrimental to the children's development and adjustment disorders. She recommended instead the mother's rights be terminated due her "co-dependency, inability to maintain long-term sobriety, . . . and inability to provide safety and stability presently and in the past." The children's guardian ad litem agreed.

DHS also recommended the children not be placed with the mother because "[t]hey've had upwards of six placement changes in their short lives, and it does not seem fair to them to have to go through the traumatic events of moving locations, towns, caretakers yet again . . . simply to have to wait for a parent to become sober." DHS also suggested placement with the mother would generate a "false sense of security" because the mother and children would be under constant supervision. The mother's past behavior indicates the danger to

the children lies when she is no longer under constant supervision—she returns to the father and eventually relapses. The mother alleges DHS is unfairly preventing the children from being placed with her. She fails to recognize DHS articulated specific reasons for its recommendation, and she does not assert why the reasons DHS presented are overcome.

In considering whether to place the children with the mother, the juvenile court noted, "Normally, . . . that's a great opportunity; but that's already happened once [in 2012], and that opportunity was spurned. [N]umerous attempts by Mom at unsuccessfully participating in outpatient [are] indicator[s] that she's not willing to make changes that are genuine for these children." We agree. Though the children's placement with the mother during her first in-patient treatment was positive during treatment, she nevertheless continued her relationship with the father and relapsed into substance abuse. The mother's current request that the children join her at the treatment facility must be considered in the context of the prolonged history of this case. For the same reasons the juvenile court declined to place the children with the mother at the treatment facility, the children will not be able to be returned to her custody in a reasonable time.

The father argues the third prong is not satisfied because the children could potentially be placed with the mother at the in-patient facility. However, "each parent's parental rights are separate adjudications, both factually and legally." *In re D.G.*, 704 N.W.2d 454, 459 (Iowa Ct. App. 2005). The father may not assert the mother's right on her behalf, nor does his assertion bear upon the children's ability to be returned to his care.

We next consider whether termination is in the best interests of the children by giving "primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). We conclude termination is in the children's best interests. The children need permanency and structure in their lives. For the sake of their own safety, they cannot continue to be in the care of the parents, who both struggle with amphetamine dependence and have no permanent residence. The CINA proceedings have been ongoing since the 2011 adjudications. To serve the children's long-term nurturing and growth, it is in their best interest to terminate the parents' rights expediently and permit them to enter a permanent placement as soon as possible. None of the mitigating factors found in Iowa Code section 232.116(3) have any impact on our conclusions.

**IV. Conclusion**

Iowa Code section 232.116(1)(*l*) supports the termination of both parents' rights to both children. Termination is in the children's best interests. We affirm the termination order.[5]

**AFFIRMED ON BOTH APPEALS.**

---

[5] We note the mother's petition on appeal seeks relief that is outside the scope of the current proceedings. The petition requests reversal of the termination order; however, it also requests reversal of the juvenile court's CINA adjudication order and dispositional order, as well as reversal of the order removing the children from the mother's care. Only the termination order is before us on this appeal.